# OCTOBER TERM, 1898.*

119    1|
£119  545|

## BELCHER *v.* CURTIS.[1]

119    1|
£124  338|

1. MORTGAGES—WITHHOLDING FROM RECORD—SUBSEQUENT CREDITORS.

   The withholding a mortgage from record in order not to impair the mortgagor's credit operates as a legal fraud upon persons extending credit in reliance upon the mortgagor's apparently unincumbered title.

2. SAME—FORECLOSURE—PARTNERSHIP—JUDGMENT BY CONFESSION.

   One seeking to foreclose a mortgage which he withheld from record to enable the mortgagor, a copartnership, to obtain credit, cannot attack a confession of judgment in favor of one who extended credit in reliance upon the record, on the ground that it was signed by only one of the partners, where the partner not signing raises no question as to its validity.

3. SAME—FRAUD—JUDICIAL SALE—ESTOPPEL.

   A judgment creditor as against whom a mortgage is fraudulent cannot, after purchasing the property at judicial sale under his judgment, challenge the validity of the mortgage, since competitors would take the incumbrance into consideration in making their bids, and the creditor cannot use the mortgage to prevent competition, while he secretly relies upon the debtor's fraud to invalidate it.

Cross-appeals from Eaton; Dodds, J., presiding. Submitted October 5, 1898. Decided December 13, 1898.

Bill by Fred S. Belcher, executor of the last will and testament of Frank S. Belcher, deceased, against Jonathan J. Curtis and Henry H. Curtis, copartners as Curtis & Son, and others, and also against Swift & Co., a corporation, and Wenzel Schrenk and others, copartners as

---

* Continued from Vol. 118.

[1] Rehearing denied January 20, 1899.

Schrenk & Co., judgment creditors of Curtis & Son, to foreclose a mortgage. From a decree for complainant except as to defendant Swift & Co., complainant and defendants Schrenk & Co. severally appeal. Affirmed.

*Huggett & Smith*, for complainant.

*Garry C. Fox* (*A. W. Brickwood*, of counsel), for defendants.

MOORE, J. The defendants Curtis & Son were in May, 1894, engaged in a manufacturing business at Charlotte. May 19, 1894, they gave a mortgage of $15,000 to Frank S. Belcher, deceased, to secure present and future indebtedness. The mortgage was not recorded until the 5th of June, 1895. In the interval between the giving and recording of the mortgage, Curtis & Son purchased goods upon credit from Swift & Co., and from Schrenk & Co., defendants herein. Neither of these companies knew, at the time the credit was given, of the existence of the Belcher mortgage. March 17, 1896, Swift & Co. obtained a judgment against Curtis & Son for $166.20 and costs of suit. A transcript of this judgment was taken to the circuit court. An execution was issued, and a levy made upon the property covered by the mortgage, but no sale of the property was made. June 15, 1896, Schrenk & Co. commenced suit against Curtis & Son, upon which they obtained judgment November 16, 1896, for $2,012 and costs. A levy was made upon the property covered by the mortgage, and it was sold by the sheriff to Mr. Riegelman, the agent for Schrenk & Co., and for their benefit, for the amount of the judgment. No money was paid except the costs, and the execution was returned satisfied.

This is a proceeding to foreclose the Belcher mortgage, to which Swift & Co. and Schrenk & Co. are made parties. The circuit judge found that the withholding of the mortgage from the record was a legal fraud against Swift & Co. and Schrenk & Co. He also found that Schrenk & Co. are not in a position to challenge the priority of the

mortgage, but that Swift & Co. may challenge its priority. He granted a decree in favor of the complainant against all the defendants except Swift & Co., and postponed the mortgage as to its claim. The complainant appeals from that portion of the decree affecting the claim of Swift & Co. Schrenk & Co. also appeal from the decree.

It is claimed on the part of the complainant that the testimony of the copartners Curtis and son was not competent evidence, as Mr. Belcher is dead, and had knowledge of the same facts about which they testified. We do not think it important to discuss that question. While there is nothing to indicate any moral turpitude, it is not possible to read the record, omitting their testimony, without coming to the conclusion that the mortgage was withheld from the record because it was believed to record it would affect the credit of Curtis & Son. The withholding it from the record enabled them to obtain credit of Swift & Co. and Schrenk & Co., when they would not have been able to do so if the mortgage had been recorded. The failure to record the mortgage operated as a legal fraud upon these creditors.

The complainant attacks the judgment of Swift & Co. —*First*, because of its form; and, *second*, because the confession of judgment was signed only by Henry Curtis. We do not think the form of the judgment is fatally defective. The property which is sought to be reached by the execution issued upon the judgment is partnership property. There is nothing in the record to show Jonathan Curtis ever questioned the right of Henry Curtis to confess judgment. In 1 Black, Judgm. § 57, it is said:

" A member of a firm has no authority, by virtue of his mere relation to the partnership or his general power to act as its agent, to confess a judgment against the firm; and, if judgment be entered on such a confession, it will be void as against his copartners, though binding as a personal charge upon himself."

In 17 Am. & Eng. Enc. Law, 1042, it is said that one partner cannot confess judgment without the consent of

his copartners, and the court will relieve the nonassenting partners, either by setting aside the judgment, or by restraining execution when issued against their individual property.

"But it will not be inferred without proof that the confession was unauthorized, and the judgment cannot be * * * collaterally impeached. * * * Prior parol assent is sufficient, however, to authorize such a confession, and a subsequent ratification may be established by proof of circumstances indicating assent." Id. 1045.

In the note to 1 Lindl. Partn. (2d Amer. Ed.) 644, it is said:

" Though one partner cannot confess a judgment against another partner, even for a partnership debt, yet a creditor of the firm cannot be permitted to make objection to the judgment on that account; and a sale of partnership property, on an execution issuing upon such a judgment, will pass a perfect title to the purchaser, and, if the first lien, will be entitled to the proceeds of the sale; but the judgment will not affect the persons nor the separate property of the other partners. *Grier* v. *Hood*, 25 Pa. St. 430."

And in *Ross* v. *Howell*, 84 Pa. St. 129, it was held that—

"The interest of all the partners in the partnership property may be sold under an execution upon a judgment confessed by a single partner in the firm name and for a firm debt."

There is no question about the indebtedness. The other partner is not questioning the judgment. We do not think the complainant is in a position to successfully do so.

Was the decree wrong as to Schrenk & Co.? The questions involved are not new in this court. When these defendants learned of the Belcher mortgage, they did not levy upon the property, and then seek to set aside the mortgage before making a sale. The mortgage was good between the mortgagors and the mortgagee, and as to every one else, except creditors who had been induced to give credit, who would not have done so had it been recorded.

No one but Schrenk & Co. knew whether they intended to attack the validity of the mortgage. Other bidders at the sheriff's sale found the property with what appeared to be a valid mortgage upon it. In making their bids, they would necessarily take that fact into consideration. Would it not be unfair to other bidders and to the mortgagee to enable the judgment creditor to make his bid, and then allow him to have the mortgage set aside?

There is a full discussion of the principles involved, in the case of *Messmore* v. *Huggard*, 46 Mich. 558:

"It cannot plausibly be claimed that the law will suffer the judgment creditor to occupy any more favorable position as bidder at his sale than do all other persons. Judicial sales are required to be public for the purpose of inviting full and free competition, with the primary object of producing for the benefit of parties concerned as large a price as public biddings can secure for them. A secondary object is to give all who may desire the property an equal opportunity to compete for it. But full and free competition implies that all parties have equal knowledge of the state of the title; and the policy of the law is defeated if some one party may bid with such advantages as render competition impossible. *Ledyard* v. *Phillips*, 32 Mich. 13. But nothing can be plainer than that if the judgment creditor could bid with the secret assurance that he was to have an unincumbered title, when others must suppose they were buying subject to the mortgage, this assurance gave him an advantage in bidding to the full amount of the mortgage, and practically put competition entirely out of the question. Not only would this be unfair to other bidders, and for that reason inadmissible, but it would be particularly unfair to the mortgagee. When the sale appears to be of the equity of redemption only, the mortgagee has no occasion to trouble his mind about it; but, if he were distinctly notified that it was made in hostility to his mortgage, he might, even if conscious of his good faith, prefer to redeem, rather than encounter the risks of litigation. This would be his legal right, and it cannot lawfully be taken from him through a secret understanding between the officer and the creditor, of which he has neither actual nor implied notice. It is true that if the defendant Francis Huggard has knowingly accepted a fraudulent mortgage, and becomes

a loser thereby, he is entitled to no sympathy; but even voluntary fraud does not put one's interests out of the protection of the law, or entitle the party defrauded to confiscate them.   A fraudulent conveyance is good as between the parties (*Cleland* v. *Taylor*, 3 Mich. 201; *Millar* v. *Babcock*, 29 Mich. 526; *McMaster* v. *Campbell*, 41 Mich. 513); and even creditors are not permitted to assail it, except by judgment and execution (*Fox* v. *Willis*, 1 Mich. 321).   And there may be equities between the parties which will support a mortgage, void as to creditors, when the creditors do not attack it by proper proceedings. While, therefore, the complainant had an undoubted right to have the *bona fides* of the mortgage tested before sale, there can be no equity in permitting him to purchase the land apparently subject to the mortgage, and then to have its lien annulled afterwards.   He has a right to reach his debtor's property, and have it sold for what it will bring at a fair and open sale; but he has no claim to speculate out of his debtor's fraud, and, by using the mortgage to keep others from competing, obtain the property for so much less than its value.   A purchase under such circumstances must be held to be what it appeared to be at the sale,—a purchase subject to the mortgage."

See, also, *Cranson* v. *Smith*, 47 Mich. 189; *Wolf* v. *O'Conner*, 83 Mich. 301.

Decree is affirmed, with costs.

GRANT, C. J., MONTGOMERY and LONG, JJ., concurred.   HOOKER, J., did not sit.