## Staunton.

### HELSLEY AND ALS. V. FULTZ.

September 22, 1822.

1. EQUITABLE JURISDICTION—*Breach of trust.*—It is a rule of courts of equity that they will not "assist one wrongdoer against another." If the agreement be executory, its execution will not be compelled, nor its cancellation decreed. If it has become executed, it will not be set aside and the fraudulently conveyed property restored to the plaintiff. In all such cases the parties will be left as they placed themselves.

2. IDEM—*Confederate transactions.*—In 1862, H qualified as curator of C, and among the assets was a debt, secured by deed of trust, executed on land in 1856. Balance due July 24th, 1863, was $2,317, which was then paid by the debtor F in Confederate currency. H received the currency on condition that he incurred no responsibility, and his counsel approved. The counsel disapproved, and H refused to release the trust deed. It was not shown that there was anything in the condition of the estate or of the debtor which justified such collection. On bill filed by debtor in 1867, claiming that the debt had been paid, and praying that the trust deed be released—

HELD:

 1. The court will not interfere.

 2. The receipt of the Confederate currency was a *devastavit*, wherein the trust debtor participated.

 3. Had the transaction been consummated by the release of the trust-deed, the court would have held both payer and receiver responsible for the debt to the distributees of C.

 4. But as H invested the currency in Confederate bonds, in view of the circumstances disclosed by the record, F is entitled to a decree against H, *personally*, for the value of the currency paid him, with its interest.

Appeal from decree of circuit court of Shenandoah in suit of Jonathan Fultz against Philip Helsley, curator and executor of Peter Craig, deceased, and R. M. Conn, trustee.

'The object of this suit was to compel a release of a trust deed made 20th March, 1856, by said Fultz to said Conn, trustee, to secure a debt to said Craig, on the ground that the same had been paid in 1863 to the curator. The circuit court decreed in favor of Fultz, and Helsley and Conn appealed.

The opinion of the court fully states the facts of the case.

*M. Walton* and *H. C. Allen,* for the appellants.

*H. St. G. Tucker,* for the appellee.

STAPLES, J., delivered the opinion of the court.

The appellant qualified as the curator of Peter Craig in January, 1862. Among the assets which came to his hands was a debt due by Jonathan Fultz to the testator, secured by a deed of trust upon real estate, bearing date 20th of March, 1856. This debt, amounting on the 24th of July, 1863, to about $2,317, was on that day paid by the appellee, .Jonathan Fultz, to the appellant in Confederate money. A controversy having arisen between the parties with respect to the terms and conditions upon which the money was received, the trustee refused to execute a release of the trust deed.

In the year 1867 the present bill was filed by the appellee, claiming that the debt had been paid, and asking that the trustee may be required to execute a proper release of the deed of trust. To this bill the appellant filed an answer, in which he insisted that, acting as a personal representative, he consented to receive the money upon condition that he was to be free from all responsibility in so doing, and that his counsel should advise that it was legal and proper for him to accept payment in Confederate

money; that appellant's counsel had advised against the arrangement, and that appellant had accordingly refused to release the deed or to instruct the trustee to do so.

At the hearing upon the bill, answer, exhibits, and depositions of witnesses, the circuit court held the payment to be valid and entered a decree allowing the appellee credit for the same, and further directing an account to be taken of the amount still due, if any, under the trust deed. From that decree, an appeal was allowed by one of the judges of this court. After a careful examination of the record, I am satisfied that this decree of the circuit court is erroneous, and must be reversed. In the first place, the appellant in receiving payment of a specie debt, well secured by a lien upon real estate, in Confederate currency, as late as July, 1863, was guilty of a palpable breach of trust, according to numerous decisions of this court. There was nothing in the condition of the estate, or in the circumstances of the debtor, justifying such collection, or even rendering it expedient or proper.

The money was not needed for the payment of debts or legacies, even though the appellant as curator had been authorized, as he was not, to make distribution, or pay legacies. The bill is nothing more or less than an application to a court of equity to give effect to a transaction which was in violation of the duty of the appellant as a fiduciary, and a fraud upon the rights of third parties. The debt in question did not belong to the appellant, but to the estate he represented. The parties interested in it are creditors and legatees, none of whom are before the court, or have had any opportunity of being heard. A decree releasing the deed of trust may throw upon them the loss of the debt, or it may impose upon the sureties, on the curator's official bond, a heavy pecuniary liability growing out of this very transaction.

Is the appellee in a condition to ask such relief? Can he

be entertained in a court of equity in consummating such a transaction? There are a number of cases in which it has been held by this court, that although the fiduciary who received depreciated Confederate currency in payment of a well secured specie debt was guilty of a *devastavit*, yet the debtor who made the payment was protected, because, as a general rule, the debtor did not know the state of the executorial accounts, and he had the right to presume that the money is needed for the purpose of paying debts or legacies, or for some other object advantageous to the estate. But it is equally well settled that if the debtor is apprised at the time that the money is not needed for any of these purposes, if he is aware that the collection was made merely for investment in Confederate bonds, and the safety of the fund thus hazarded upon the issues of the war, he is equally guilty with the fiduciary who receives the money, and like him is answerable to the parties interested.

Upon this point I refer to the cases of *Patteson* v. *Horsley*, 29 Gratt. 263; *Patteson et als.* v. *Bondurant's Ex'or*, 30 Gratt. 94, and authorities there cited. In the case before us the appellee knew the money paid by him was not needed for the payment of debts and legacies; indeed, he must be presumed to have been aware that under the law the curator was not authorized to pay legacies. Both parties perfectly understood that so soon as the money was paid to the appellant, it would be turned into Confederate bonds, as a permanent investment; and, indeed, it was so invested, and in that form perished in the hands of the appellant.

The whole transaction was a mere change of securities for the benefit of the debtor, who thus discharged a well-secured debt of $2,300, in a currency worth a little more than two hundred dollars.

In this flagrant wrong upon the rights of others, the appellee knowingly participated. He is therefore here as a

wrongdoer, and, as such, he asks the court to aid him in consummating a breach of trust. If this court should decree in his favor, he would still be liable to the parties entitled to the fund for the whole amount of the debt, for, as has already been stated, all who participate in a breach of trust are jointly and severally responsible. *Barksdale* v. *Finney et als.,* 14 Gratt. 338.

It is a well established rule of courts of equity not to assist one wrongdoer against another—a doctrine expressed in the maxim that he who comes into equity must come with clean hands. This maxim is more frequently invoked in cases upon contracts entered into in fraud of the rights of creditors and other persons. The cases before this court are numerous in which it has been held that a court of equity will not, at the suit of either party, afford a remedy. It will not, while the agreement is executory, either compel its execution or decree its cancellation, nor, after the agreement has been executed, will it set it aside and restore the plaintiff to the property which has been fraudulently conveyed. 1 Pomeroy's Equity Jurisprudence, § 401.

The same rule applies to breaches of trust; indeed, to all cases where the party seeking the aid of the courts has been guilty of conduct in violation of the principles of equity jurisprudence with reference to the subject matter of litigation. In all such cases equity leaves the parties in the position in which they have placed themselves, refusing all affirmative aid to either of the participants in the fraud, breach of trust or other misconduct. Pomeroy, § 397.

It is very true the legatees of the estate are not interposing any objection in this case; but no opportunity of doing so has been afforded them, as they are not before the court. That they will not give their sanction to a transaction which inflicts upon them the loss of a large debt, is perfectly certain. If, as must be conceded, the payment is

invalid as to them, a court of equity ought not, and cannot, deprive them of a valid security given by the debtor for its payment.

It seems to me, therefore, very clear that the appellee is not entitled to a decree for the release of the trust deed, nor is he entitled to a credit upon the debt for the amount paid.

I come to this conclusion the more readily because a careful survey of the testimony satisfies my mind that in the beginning the appellant consented to receive the Confederate money, provided Mr. Walton, his counsel, approved of it. This is proved by the deposition of the appellant, his daughter, Phillip C. Dellinger, and was admitted by Samuel Fultz, the son of the appellee, acting as his agent throughout the transaction. Mr. Walton being absent from home, his advice could not be obtained. The appellant then agreed to take the money, with the understanding that he should not sustain any loss by the arrangement. The appellant, it seems, had the fullest confidence in the success of the Confederate cause and in the ultimate value of its securities; but he was not willing to receive payment of a fiduciary debt, in the then depreciated currency, without some understanding that he would be secure, or without the advice of counsel in whom he had confidence.

It is very difficult, in the conflict of testimony, to accurately ascertain the true history of the transaction, and in the uncertainty which surrounds it, all that can be done is to allow the appellee, or his estate, the value of the Confederate money paid by him. This, I think, he is entitled to, because the appellant invested it in Confederate bonds, and thus placed it beyond the control of the appellee. The appellee, however, has no claim to an offset against the debt secured by the deed of trust. All that he is entitled to is a decree against the appellant personally for the value of the Confederate currency, with interest.

My opinion, therefore, is to reverse the decree of the circuit court and to enter a decree in conformity with the views here expressed.

In conclusion, it is proper to say I am satisfied that neither of the parties is guilty of actual fraud, and that neither meditated any wrong upon the rights of others; but the transaction is none the less reprobated and condemned as fraudulent in contemplation of law.

DECREE REVERSED.