*SAMUEIyS, J.
A question is "made whether this court has jurisdiction to try this cause under the statute, Sessions Acts of 1852, p. 53, ? 9. The slave, on which the execution is levied, is alleged to be of the value of six hundred and fifty dollars; but the debt, interest and costs, for which the execution issued, make an amount less than five hundred dollars. It has been said that the appellant, and those having the like interest with her, may relieve the slave from the lien of the execution, by payment of a sum less than five hundred dollars; and further, that the price of the slave, if sold, being first applied to discharge the execution, the residue will go to the appellant; that thus the only amount in controversy is the amount of the execution. The reply to these objections I conceive to be obvious and conclusive. The appellant sought by injunction to restrain the sale of a slave under an execution for the benefit of the appellees Haskins and Terr3r; the slave is alleged to be worth six hundred and fifty dollars; if the appellees had not been restrained they would have caused the slave to be sold; thus the complainant, if her right be good, as alleged, is in danger of having the slave converted into money. If complainant would be able at law to recover every dollar for which the slave may sell, or to recover his real value, without regard to the price sold for, or to recover the specific slave, still the remedy by injunction is appropriate. At one time it was held in this court that an injunction to a sale of slaves could not be sustained, unless it was averred and proved that such slaves were of some peculiar valúe, for which money would not be an adequate compensation. Allen v. Freeland, 3 Rand. 170; Randolph v. Randolph, 6 Rand. 194. More recent decisions, however, have settled the law otherwise. Harrison v. Sims, 6 Rand. 506; Sims v. Harrison, 4 Leigh 346; Kelly v. Scott, 5 Gratt. 479. If; then, the object of retaining a specific slave, rather than receive his *value in money, or to recover him by suit at law, be in itself a cause of suit in equity, the appellant is rightly before this court. If she have a title to this slave, she may assert it, and this without reference to the amount of money the appellees may propose to give her in lieu of him.
If appellant have the better right, it is error to give her that right, upon terms of paying money, however small in amount; she should not be put to an election to give up such better right, or to enjoy it upon condition of paying money not properly chargeable upon the subject. Iam of opinion the court here has jurisdiction to try the causeThe court of four members, however, being equally divided in opinion on the question, the decision must be regarded as settling the law of this case only.
The merits of the case I hold to be with the appellees. The deed of trust given by Tyree to secure a pretended debt to Robert C. Snoddy, and another pretended debt to John C. Snoddy, was made with express intent to delay, hinder and defraud Tyree’s creditors. The sale by the trustee and the *615 purchase by Robert C. Snoddy was but- the second step in the plan of fraud concocted between Tyree and Robert C. Snoddy. Although this deed and the sale under it may bind the parties to the fraud, yet as against Tyree’s creditors, they have no effect whatever. After Snoddy’s death his administrator succeeded to the title of his intestate, to be applied in the due course of administration; this title, as already said, was good against Tyree, but void against his creditors. I do not understand the appellant’s counsel to insist that this succession of itself gave the title any additional strength. It is insisted, however, that events occurring since Snoddy’s death, have perfected the title held by his distrib-utees ; that the possession of the slave for five years by the administrator himself gives *title under the statute of limitations; or if the administrator held for less than five years, his possession may be added to that of the distributee the appellant, and thus make five years, the limit prescribed by the statute. It is further insisted that the appellant, having received the slave as part of her- share in the distribution of her husband’s estate, without notice of fraud, must be regarded as a purchaser for value without notice, and be protected as such.
The bar prescribed by the statute, Code of Virginia, ch. 149, 4 13, p. 593, cannot be relied on in this case. The legislature thereby intended to protect mere volunteers chargeable with fraud only by construction of law, after five years. But if actual fraud exist, and thereby a creditor have right for a “cause,” other than “want of consideration deemed valuable in law,” to impeach the transaction, the plain terms of the statute leave this right as it was before the Code was enacted. That the title of Snoddy is tainted with actual fraud, is alleged in the answer and shown by the proof; and thus the case is not affected by the statute last referred to.
It is somewhat difficult to understand how and against whom the appellant’s counsel propose to apply the statute of limitations. It cannot be against Tyree; his title as between himself and Snoddy had passed by the deed and the sale under it: He had no cause of action which could be asserted at any time. The statute cannot be said to bar a cause of action, if such cause never existed. It cannot be against the appellees Haskins and. Terry. If their rights in regard to the property shall be held to date from April 1848, when their judgment was obtained, or shortly thereafter when their execution was issued, five years had not elapsed when the levy was made; and for this reason, if no other existed, it must be held that the statute does' not apply. Without pointing.out other difficulties *in the way of the attempt to apply the statute, I am of opinion to rest the case upon the ground so clearly stated by Judge Heigh in the opinion reported in Wilson v. Buchanan, 7 Gratt. 334, 343. Although the case just cited was one growing out of a voluntary conveyance, and thus fraudulent only by construction of law, and although a case like it might now be decided otherwise, under the statute, Code of Virginia, p. 593, 4 13, yet at the time it was decided constructive frauds and actual frauds stood upon the same ground, and the decision gave the same rule in regard to both. Actual fraud is not protected by the statute last cited; and thus the authority to that decision applies in all its force to the case before us. Notwithstanding the opinions of some of the judges in the case of Hutson’s adm’r v. Cantril, 11 Leigh 136, the case cited from 7 Gratt. should be adhered to as well because of its intrinsic justice, as of the unanimous sanction given to it by this court.
The appellant’s pretension that she is to be regarded as a purchaser for value without notice is without warrant. This alleged purchase rests upon the single fact that she took this slave as part of her distributive share in her husband’s personal estate, thus leaving his value to be applied for the benefit of the other distributees out of the other personal estate. If the distributees were mistaken in regard to the value of the distributable surplus, in holding the slave in question to belong to the estate, the obvious remedy is to correct the mistake, not to perpetuate it. The appellant had her rights in the true surplus only; this surplus, upon the facts appearing in the record, is ascertained by deducting the amount of the lien on the slave from the larger and mistaken amount4 which had been distributed. By erroneously including this slave the surplus and her interest are made to appear larger than they ought to be.
*The case of Huston’s adm’r v. Cantril, 11 Leigh 136, relied on by the appellant’s counsel, affords no support to the case of their client. If we should concede all that was said by all or any .of the judges in that case, yet the facts of this case are so widely different from those in that, as to deprive that case of all weight in the decision of this. In. the case from 11 Heigh the conveyance alleged to be fraudulent was made before the marriage, and, as supposed by some of the judges, may in some degree have induced the marriage; in our case it is not alleged that the conveyance was made before the marriage, and it is probable at least, it was made afterwards. In the case from 11 Heigh, the husband claimed, as purchaser by marriage, the absolute title to the slaves; in our case the widow does not claim to have the absolute title but only a life estate in one-third part of her husband’s slaves. In our case it is not alleged that marriage entered or could enter into the consideration at all, but the only consideration alleged is the giving up a claim on other portions of the estate, and having received in lieu thereof this slave as part of her distributive share. This is the same as to say that distributees (mere volunteers) of the fraudulent grantee,, by foregoing part'of a claim on a surplus which includes the fruit of the fraud, in consideration of *616 the property fraudulently acquired thereby, became purchasers. This pretension keeps out of view the fact that the whole personal estate of such grantee may be held liable to make good to creditors any injury done to them by the fraud. In the case before us the alleged consideration and subject of sale might both be held liable to the creditors, if necessary for their indemnity; and it is clearly wrong to ‘permit the distributees to divide the estate into two-parcels between themselves, calling one a consideration, the other a subject of sale, and thus withdraw those parcels, or either of them, from their liability to the superior claims of the creditors.
*1 am of opinion that neither the statute of limitations nor the alleged purchase should prevent the levy of- the execution, and that the' decree should be affirmed.
DAISTIRT, J., concurred in.the opinion of Samuels, J.
MONTCURE) and I/EJE), Js., thought this court had no jurisdiction of the case. But on the merits they concurred in the opinion of Samuels, J.
Decree affirmed.