𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

WISSLER V. CRAIG'S ADM'R.

JANUARY 8th, 1885.

1. LACHES is neglect to do something one ought to do. Mere lapse of time, unaccompanied by circumstances affording evidence of a presumption that the right has been abandoned, is not considered "laches." *Cole* v. *Ballard*, 78 Va. 139.

2. IDEM—*Indicia of laches*—Where, from delay, no correct account can be taken, and any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties, as to render it difficult to do justice, the case will be considered as a case of "laches," and the court will not relieve the plaintiff. *Harrison* v. *Gibson*, 23 Gratt. 212.

3. IDEM—*Case at bar* is one which, tested by the recognized criteria, is not a case of such laches as should prevent a court of equity from affording relief to the plaintiff. But it is one in which the maxim, *caveat emptor*, is clearly applicable to the defendant as a purchaser at a judicial sale of land included in an unreleased, duly-recorded trust-deed.

Appeal from a decree of the circuit court of Shenandoah county, rendered April 14th, 1884, in the chancery cause of Walton Craig, anministrator d. b. n. c. t. a. of Peter Craig, deceased, complainant, against Jonathan Foltz's administrator and others, defendants. Argued at Staunton, but decided at Richmond.

By deed, duly recorded in 1856, said Foltz conveyed to R. M. Conn, trustee, 573 acres of land in said county, to secure to Peter Craig a debt of $2,938. In 1859 Conn, the trustee, sold 362 acres thereof, and applied the proceeds to the debt, leaving unpaid about $2,317 as of July 24th, 1863, when Foltz paid that

sum, in Confederate currency, to Philip Helsley, who, Peter Craig being then dead, had been appointed curator pending a contest about his will. But the curator did not cause the trustee to execute a release of the trust-deed. In 1867 Foltz sued the curator and the trustee in chancery for the release. In 1871 the circuit court held the payment valid, but did not direct the execution of a release. The will having been established, Helsley had qualified as Peter Craig's executor; but having been removed, in 1872, Walton Craig qualified as administrator *de bonis non* with the will annexed of said Peter Craig, and in 1878 instituted a suit against Helsley for a *devastavit* in receiving, as such curator, said currency. To the bill Helsley demurred, and appealed to this court from the decree overruling his demurrer, which decree was affirmed (see *Helsley and als.* v. *Craig's adm'r and als.*, 33 Gratt. 716), and Helsley required to answer the bill. The suit rested. In 1880 Helsley and the trustee, Conn, petitioned for a rehearing of the interlocutory decree of 1871, but it was refused. From the decree of refusal they appealed to this court, which reversed the decree, and held that the receipt of the Confederate currency was a *devastavit* and that Foltz was entitled to neither a release nor a credit therefor. See *Helsley and als.* v. *Foltz*, 76 Va. 671.

In August, 1863. after paying the Confederate currency to the curator on the balance of the trust-debt, Foltz sold and conveyed eighty-four acres of the said 572 acres to one Philip Heltzell, who was cognizant of the trust-deed and of the payment in said currency. After Heltzell's decease, under a decree in a suit by his creditors against his heirs, those eighty-four acres were sold; the sale was confirmed, and the deed was made to the appellant, Jacob Wissler, who had paid the purchase-money. The bill for the sale and the conveyance of the land to Wissler both described it as "the land Heltzell had purchased of Foltz." Other parcels of the trust-land had been sold and conveyed by Foltz in his lifetime to different persons.

In 1883 Walton Craig, as such administrator, instituted this suit to obtain the aid of said circuit court in ascertaining what amount was still due to his testator's estate, and in enforcing said trust-deed. Wissler answered the bill, setting up his purchase, the improvements he had made, his claim to be allowed therefor, and that Craig's representative had been guilty of such laches in collecting the said debt as debarred him from subjecting the land held by the respondent. But the circuit court disallowed the claim for improvement, held there had been no *laches*, and decreed that Craig's administrator recover of Foltz's administrator, out of funds in his hands to be administered, $4,726.50, with interest on $1,988.89 from October 12th, 1883, till paid and costs; and in default of payment in thirty days, that the balance of the 572 acres be sold in the inverse order of the several alienations of the different parcels thereof. From that decree an appeal and *supersedeas* was allowed Jacob Wissler.

*Henry C. Allen*, for the appellant.

*John E. Roller*, for the appellee.

RICHARDSON, J., delivered the opinion of the court.

The case is this: By deed, dated 21st of March, 1856, and duly recorded, Jonathan Foltz conveyed to R. M. Conn, trustee, a tract of 573 acres of land in Shenandoah county, in trust to secure Peter Craig the payment of $2,938.

In 1859 the trustee sold 362 acres of said tract, and applied the proceeds to the trust-debt, leaving a balance unpaid. Craig, the beneficiary in said deed, died in 1862. A contest arose about Craig's will, during which Philip Helsley, curator of Craig's estate, on the 24th of July, 1863, received of Foltz $2,317, the supposed balance of the trust-debt, which sum was received in Confederate States treasury notes. Then there arose a controversy as to the conditions on which the Confed-

erate notes had been received, and Conn, the trustee, refused to execute a release of the trust-deed. So, in 1867, Foltz instituted a chancery suit in the circuit court of Shenandoah county against Conn, trustee, and said Helsley, who had become the executor of Peter Craig, deceased, to compel the execution of such release. That suit was heard in September, 1871, when the circuit court held the payment to be valid, and ordered an account of the residue, if any, remaining unpaid on the trust-debt; but *did not* order the release of the trust-deed. Nothing further was done in this suit or under the trust-deed for several years. In 1872 Helsley ceased to be executor, and Walton Craig qualified as administrator d. b. n. with the will annexed of Peter Craig, deceased, and in 1878 instituted a chancery suit in said circuit court against Helsley, curator, &c., charging him with a *devastavit* in receiving the Confederate money in discharge of the trust-debt. Helsley demurred to the bill, the circuit court overruled the demurrer, and Helsley appealed to this court, which, in 1880, affirmed the decree, and remanded the cause for further proceedings. See *Helsley* v. *Craig's administrator*, 33 Gratt. 716. During the year 1880 Helsley and Conn petitioned the circuit court to rehear and reverse the decree of September, 1871, in the cause of Foltz v. Helsley, curator, and Conn, trustee, but the court refused to rehear. From this decree of refusal they obtained, in May, 1880, an appeal to this court, which reversed said decree of September, 1871, and adjudged that the receipt of the Confederate money, in discharge of the trust-debt, was a *devastavit* by said curator, in which the trust-debtor participated; and that the latter was entitled neither to a release of the trust-deed nor to a credit for the amount so paid. See *Helsley* v. *Foltz*, 76 Va. 671.

After paying the Confederate money to the curator, Foltz, in August, 1863, conveyed eighty-three acres of the land embraced in the trust-deed to Philip Heltzell, who was cognizant of the trust-deed, of the payment in Confederate money, of

the controversy about the conditions of the payment, and of the trustee's refusal to make the release, for the record shows he was examined as a witness to the payment in the suit of Foltz v. Helsley and Conn.

Philip Heltzell having died, a chancery suit was brought in 1876 in said court by Samuel Myers and other creditors of Heltzell, against his administrators and heirs, to subject the said eighty-three acres of land to the payment of his debts; and the same having been sold, under a decree in that cause, Jacob Wissler, the appellant here, became the purchaser, and the sale was confirmed to him, the purchase-money paid, and the land conveyed to the purchaser. In this suit the bill and the deed to Wissler both described the land as that Heltzell purchased of Foltz. By deed, dated February 1st, 1864, Foltz conveyed sixty acres of the land embraced in said trust-deed to B. P. Newman, who, in 1879, conveyed it to B. F. Coffman, by whom it was conveyed to the said Wissler, who, in turn, conveyed it to Charles L. Pierson. And by deed of February 6th, 1873, Foltz conveyed nine and a half acres of said trust-land to B. F. Coffman, who, in May, 1881, conveyed it to the said Jacob Wissler. So that the latter thus become the purchaser of three parcels of the land embraced in the trust-deed, the sale of which was directed by the decree of 14th April, 1884, entered by the circuit court in the case of Walton Craig, adm'r, &c., against Jonathan Foltz's adm'r and heirs, Philip Heltzell's adm'r and heirs, B. P. Newman, B. F. Coffman, Jacob Wissler, and R. M. Conn, trustee.

In his bill the complainant set out a full history of the facts aforesaid; recited that in December, 1882, after the reversal of the decree of September, 1871, the circuit court, in the case of Craig's adm'r, &c., against Helsley, curator, and Conn, declared that it would not be proper to decide that suit until the Foltz lands had been sold, and it had been ascertained whether or not there would be a loss of any part of the debt due Craig's estate from Foltz; and he averred that in performing the duty

of collecting the balance due on that debt he found so many difficulties in the way that he felt compelled to invoke the aid of a court of equity; and he prayed for a reference, to ascertain the balance due, and to settle the trustee's accounts, and for general relief.

The cause having been regularly matured, a decree was entered referring it to a master, to inquire and state (1) what balance is due on the debt of Jonathan Foltz to Peter Craig, secured in the deed of trust of March 21st, 1856, to R. M. Conn, trustee; (2) a settlement of the accounts of said trustee; (3) what part of the land embraced in the trust-deed was sold by the trustee, and what part has not been sold; (4) whether any of the lands unsold by the trustee were aliened by Jonathan Foltz, or by those claiming under him, to whom aliened, and in what order said lands should be subjected to sale to pay any balances due on any trust-deed. In obedience to this decree the master reported that the funds received by the trustee for the 362 acres of the land sold by him had been by him properly disbursed, but that the balance due on said debt was $4,726.50, principal and interest, as of October 12th, 1883; that the residue of the land, after deducting the 362 acres, had been aliened by Foltz in five parcels, three of which had been purchased (as before stated) by Jacob Wissler. The latter filed his separate demurrer and answer to the bill. He admitted the facts as stated in the bill, but insisted that Walton Craig, administrator of Peter Craig, deceased, rested on the decree of September, 1871, and instituted a chancery suit to charge said curator with a *devastavit* in receiving of Foltz Confederate money in discharge of the trust-debt; that so far as said administrator is concerned, said decree would have remained unreversed, and that it was too late then for him to come and ask the aid of a court of equity to subject the portion of the real estate, embraced in the deed of trust, which had been aliened to innocent purchasers for full value; and that the complainant had been guilty of such *laches* as to debar him from any relief so far as

he (Wissler) was concerned and his interests were involved in the premises. Said respondent, Wissler, then proceeded to state how far, and how he became interested in, and what improvements he had put upon said parcels of land since he acquired them, and insisted that he was entitled, at least, to compensation for the improvements, and asked for an account thereof.

At the hearing the circuit court held that the defendant, Wissler, was not entitled to allowance for his improvements, as against the creditor secured by the deed of trust; confirmed the report; adjudged that there had been no *laches* on the part of the complainant, Walton Craig, adm'r, &c., and decreed that he recover of Joseph Stickley, administrator of Jonathan Foltz, deceased, the sum of $4,726.50, with interest on $1,988.89, part thereof, from October 12th, 1883, until paid, and his costs, to be paid *de bonis decedentis*, in his hands to be administered; and that said debt is a valid lien under the deed of trust in the bill mentioned, upon the lands conveyed therein and not sold by the trustee, and that the lands unsold by the trustee are liable to sale to satisfy this decree, in the inverse order of alienation; and that unless the debt and costs be paid within thirty days, then special commissioners John E. Roller and Henry C. Allen shall sell the lands, &c.

From that decree the case is here on appeal obtained by Wissler. and now to be disposed of.

Upon full examination of the whole case, as presented by the record, we are of opinion that there is no error in the decree of the circuit court, and that it must be affirmed.

The only assignment of error set forth in the petition is the same substantially as that set up, by way of defence, in the answer of Wissler in the court below

" The personal representative of Peter Craig, deceased, acquiesced in the decree of 1871, in the cause of Jonathan Foltz v. Philip Helsley, curator, &c., and als., until adverse rights accrued in perfect good faith, and still continued to acquiesce in

the assertion of these rights by the petitioner and his alienees for years, and that therefore relief should have been refused when Peter Craig's administrator came into court to assert a right which he had negligently lost."

The counsel for the appellant refers to and relies upon *Hatcher* v. *Hall*, 77 Va. 573, where Lewis, P., says: "It is an inherent doctrine of courts of equity to refuse relief where there has been gross *laches* in prosecuting rights and unreasonable acquiescence in the assertion of adverse rights."

That the principle above quoted is correctly laid down there can be no doubt; and if the facts and circumstances disclosed by the record could bring this case within the influence of that principle, then the plain duty of this court would be to reverse and annul the decree complained of. And the same result would follow if this case came within the well-settled doctrine that, though the period during which a party neglects to assert his rights does not constitute a statutory bar to the claim asserted, yet the attending circumstances may justify the dismissal of the plaintiff's bill. *Foster's curator* v. *Rison*, 17 Gratt. 335; *Harrison* v. *Gibson*, 23 Gratt. 212; and *Godden* v. *Kimmell*, 99 U. S. R. 201.

But clearly this case does not come within these principles when tested by the record. The appropriate inquiry here is: Has the complainant below, the appellee here, the administrator of Peter Craig, deceased, been guilty of such *laches*, in collecting the debt due his decedent's estate from Foltz, and secured by the deed of trust on Foltz's lands now in the possession of the appellant, Wissler, and his alienees, as ought to bar the right to enforce that trust-deed as against them?

In *Harrison* v. *Gibson*, *supra*, it was held that where, from delay, no correct account could be taken, and any conclusion to which the court arrived must, at best, be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties, as to render it difficult to do justice, the court will not relieve the plaintiff.

Looking to these *criteria,* do they or any of them apply to the case in hand, and bring it within the rule to dismiss the plaintiff's bill? *Laches* is such neglect or omission to do what one should do as warrants the presumption that he has abandoned his claim, and declines to assert his right.

How stands the case here? The record nowhere shows that the representatives of Peter Craig ever gave reasonable ground to justify any one to suppose even that the right to collect the Foltz debt, by enforcing the trust-deed on his land, had been abandoned. On the contrary every act, fairly construed, indicated quite the contrary. The trust-deed was duly recorded. The amount of the trust-debt was ascertained. The facts connected with the alleged discharge of the balance, by the payment of Confederate money, were preserved in the record of the suit of Foltz v. Helsley, curator, &c., and the fact that the payment was no discharge had become *res-judicata* before this suit was instituted, in 1883. Nothing had, by lapse of time or *laches,* become obscure. There was no room for conjecture. The pathway to a full and fair settlement, upon fixed legal principles, was open and plain, with no obstruction to the attainment of complete justice.

When Philip Heltzell purchased the eighty-three acres he was cognizant of all the circumstances. He could have had no color of claim to a better right than the trust-deed gave. The decree in the creditor's suit against his representative and heirs directed a sale of his land which he purchased of Foltz. Wissler purchased at the judicial sale, accepted conveyance of the same land, and bought and received title to only what had been Heltzell's. The familiar maxim *caveat emptor,* so often quoted as applicable to purchasers at such sales, applies with peculiar appropriateness to this purchaser.

So soon as Helsley, the curator, discovered that the conditions upon which he consented to receive the Confederate money from Foltz had not been fulfilled, he refused to allow Conn, the trustee, to release the trust-deed. In 1867 Foltz instituted his

suit to compel the execution of the release. In 1871 the circuit court decided that the payment in Confederate money was a valid credit on the trust-debt, but ordered the true balance to be ascertained, and did not order the release to be executed.

Walton Craig, adm'r, &c., was no party to that suit, and had no authority to have it reheard or appealed. Helsley ceased to be executor in 1872, but took no step to have the decree of 1871 reheard or appealed, as no release had been decreed. In 1878 Walton Craig, adm'r, &c., sued Helsley, curator, &c., for the *devastavit*. Helsley attempted defence by demurrer, but failed in that, and then it was he conceived the idea of avoiding his liability by appealing from the decree of 1871, which was in the way of the enforcement of the deed of trust. That impediment being removed by the reversal, three months afterwards—to-wit, in the month of December, 1882—the circuit court refused to decide the question of *devastavit* until the Foltz lands had been sold under the trust-deed of 1856. And in June following the appellee instituted his suit to remove the difficulties which the trust-debtor, Foltz, and his alienees, including the appellant, had placed in the way of the enforcement of said deed of trust. This history of these various transactions seems to evince not abandonment, but long and pertinacious efforts to hold on to the lien of the trust-deed on all the land embraced therein, as a security for and means of payment of the debt thereby secured, on the part of the representatives of Peter Craig.

It is true that the appellant paid his money for the parcels of land, and doubtless thought himself safe in so doing; but in this he disregarded the knowledge or means of knowledge at his command amply sufficient for his protection. There was the recorded trust-deed, unreleased. That clew, diligently followed up, could but have afforded all needed information as to the exact condition of the title he was paying his money for. It would have led him to knowledge of Foltz's suit for the release; to the decree of 1871, which did not order the release,

and which was interlocutory, and amenable at any time to be reheard and reversed. And surely so long as that decree was liable to reversal, on appeal or upon rehearing, it was reckless in Wissler to rely on it as a finality.

"Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. *Caveat emptor* is one of the best-settled maxims of the law, and applies exclusively to a purchaser. He must make due inquiry, or he may not be a *bona-fide* purchaser. He is bound not only by *actual* but also by constructive notice, which is the same in effect as actual notice." *Burwell's adm'rs* v. *Fauber*, 21 Gratt. 446. And in *Cardover* v. *Hood*, 17 Wall. 1, it is said: "Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself."

In the light of these principles it is clear that the loss and hardship of which the appellant complains is attributable solely to his own careless neglect of the ample opportunities of information at his command, and not to any *laches* of the appellee, and that the decree of April 14th, 1884, must be affirmed, with costs to the latter.

DECREE AFFIRMED.