# CHARLESTON.

### THORNBURG *v.* BOWEN, *et al.*

Submitted January 12, 1893.—Decided January 28, 1893.

1. FRAUDULENT CONVEYANCE—ASSIGNMENT.

   A deed fraudulent on its face and void in toto, not being attacked or set aside, is good between the parties. (p. 545.)

2. FRAUDULENT CONVEYANCE—ASSIGNMENT—TITLE—POSSESSION.

   Where personal property has been assigned by a recorded deed fraudulent on its face and subsequently has been purchased by a party for value and has remained in his actual, undisturbed and continuous possession for five years, his title thereto is perfect, provided he was not a party to the fraudulent assignment, and has not in any way nor by any means direct or indirect obstructed the creditors of the fraudulent assignor in the prosecution of their rights. (p. 545.)

CAMPBELL & HOLT for plaintiff in error, cited 1 Sto. Eq. Juris. § 409; 17 W. Va. 763; 4 Munf. 313; 6 Munf. 42; 2 Pom. Eq. Juris. § 754.

McCOMAS & McCOMAS for defendant in error, cited 12 Gratt. 363; Benj. Sales § 6; Code (1891) c. 50, s. 152.

HOLT, JUDGE:

This was a contest between Bowen, Davis & Co., execution creditors of Wilson & Beardsley, and Thomas Q. Thornburg, a purchaser of a span of horses in controversy, which resulted in a judgment in favor of the execution-creditors in the Circuit Court of Cabell county, from which the purchaser, Thomas Q. Thornburg, has obtained this writ of error. The facts are as follows:

On the 9th day of December, 1884, the firm of Wilson & Beardsley, who owned and operated a flour mill in the city

of Huntington, made an assignment to William T. Thompson of all their property for the benefit of their creditors, including the two gray horses in controversy. Thompson, the trustee, took possession of the horses, under the assignment. This assignment was not in evidence, but is conceded in argument and by agreement to be fraudulent on its face and void, and to have been so held by the decision of this Court in *Landeman* v. *Wilson*, 29 W. Va. 702 (2 S. E. Rep. 203). Thompson, in April, 1885, with the consent of the partner Beardsley, and through him as his agent, for value sold and delivered the two horses to William Biggs. Biggs kept them in his possession until December, 1885, when he sold them to Ward & Henry.

In March, 1887, plaintiff in error, Thomas Q. Thornburg, bought the horses of Ward & Henry, paying for them the sum of two hundred and fifty dollars. Thornburg had no notice of any claim ever having been set up against them until the defendants Bowen, Davis & Co. levied on them with their execution as the property of their debtor, Wilson & Beardsley, on the 27th day of August, 1890.

Thereupon Thornburg, under sections 151 and 152 of chapter 50 of the Code, filed before the justice his petition to have an issue made up to try his right to the horses, and for a judgment releasing the same from levy. This issue was made up and tried by the justice, who issued the execution. He gave judgment for Bowen, Davis & Co., the execution-creditors. Thornburg appealed. It was tried by a jury before the Circuit Court on 28th March, 1891, and they found a verdict for the defendants in error, Bowen, Davis & Co.

During the progress of the trial plaintiff moved the court to give to the jury three instructions. The court gave No. 1 and No. 2, to which defendants excepted, and refused to give No. 3, and plaintiff excepted. On motion of defendants, the court gave to the jury instructions No. 1 and No. 2, and plaintiff again excepted. These instructions are as follows:

Plaintiff''s instruction No. 1:

"The jury are instructed that, if they believe from the evidence in this case that the two gray horses in contro-

versy were sold by Wilson & Beardsley, or that the sale was acquiesced in by them to William Biggs, for a valuable consideration, and delivered the possession of them to said Biggs; that said Biggs afterwards sold them to Ward & Henry, for a valuable consideration, and delivered possession thereof to them; that afterwards the said Ward & Henry sold the said horses to the plaintiff, Thornburg, for a valuable consideration, and delivered possession thereof to him; and if they further find that five years elapsed from the said sale of said horses to the said William Biggs before the said Bowen, Davis & Co. caused their execution to be levied thereon—then they should find the said horses for the said Thornburg."

Plaintiff's instruction No. 2:

"The jury are further instructed that, notwithstanding the deed of assignment from Wilson & Beardsley to W. T. Thompson was void, and the sale of said horses by said Thompson as such assignee to said Biggs was also void, yet, if the jury find from the evidence that said Wilson & Beardsley had knowledge of said sale, and made no objection to said sale, but acquiesced therein, then such sale was valid, binding alike upon said Wilson & Beardsley and their creditors, Bowen, Davis & Co."

Plaintiff's instruction No. 3:

"The jury are further instructed that if they find from the evidence that the plaintiff, Thornburg, and those under whom he holds, had had actual possession of the two horses in controversy for five years before the levy thereon of the execution of Bowen, Davis & Co., claiming the same as their own, under purchasers for a valuable consideration, then they should find for the plaintiff, Thornburg."

Defendant's instruction No. 1, as given:

"The court instructs the jury that, if they believe from the evidence that the plaintiff bought the horses in controversy knowing that they were the same horses conveyed by Wilson & Beardsley to W. T. Thompson, by a deed of assignment that was fraudulent and void, and that that deed was of record in this county where the purchase was made, then said Thornburg was bound to take notice of the fact that said deed conveyed no title to said horses to W.

T. Thompson—then they must find for the defendant, unless they further find that the plaintiff, or those under whom he purchased, has had peaceable possession of said horses, and claiming them as his own, for the period of five years."

Defendant's instruction No. 2, as given :

"The court instructs the jury that if they find from the evidence that if the deed of assignment made by Wilson & Beardsley to W. T. Thompson, and that the horses in controversy were conveyed by said assignment, was void; that W. T. Thompson took no title by said assignment, and could convey none to William Biggs; and that Biggs, taking no title from said Thompson, could convey none to Ward & Henry, and Ward & Henry, having no title to the horses, could convey none to Thomas Q. Thornburg, the claimant herein; but if they find that Thornburg, or those under whom he purchased, has had peaceable possession, claiming them as his own under his purchase of said horses for five years—then they must find for the plaintiff."

Plaintiff in error moved the court to set aside the verdict and grant him a new trial, but the court overruled the motion, and rendered judgment for defendants, and plaintiff excepted, and has obtained this writ of error.

Defendants in error introduced no evidence, but "relied upon an agreement, then and there made with the claimant (plaintiff in error) that the said assignment of Wilson & Beardsley to W. T. Thompson, assignee, was fraudulent upon its face, and void, and that it has been so held by a decision of the Supreme Court of Appeals of West Virginia ; and it was also agreed that the horses in dispute were embraced in said assignment." This agreement refers to the case of *Landeman* v. *Wilson,* 29 W. Va. 702 (2 S. E. Rep. 203) decided April 11, 1887.

Whether we may, under this agreement, look beyond the case as reported, to the printed record, may be a question of some doubt. From the case as reported it appears that on the 9th day of December, 1884, Wilson & Beardsley, a firm operating a large flouring mill in Cabell county, in this state, made an assignment of their property, both real and personal, including their flouring mill, to W. T. Thompson,

trustee, to securee certain creditors therein named, who were divided into three classes, and preferred in the order named. This deed was recorded on the 10th day of December, 1884. The plaintiff, Landeman, who held the claim for seven hundred and twenty two dollars and four cents which was not secured in said trust deed brought his action in *assumpsit* in the Circuit Court of Cabell county on the 20th day, of December, 1884, and filed his affidavit, and sued out an attachment, and had the same levied on the real estate included in said trust, and garnished W. T. Thompson, as having in his hands money and effects belonging to said firm. On the 2d day of March, 1885, the attachment was docketed, and on the 25th of the same month the defendants Wilson and Beardsley appeared in court, and confessed judgment upon the plaintiff's claim, and moved to quash the attachment on the ground that the affidavit filed was insufficient to support the attachment. On the 19th day of August, 1885, the court overruled the motion. W. T. Thompson, trustee, then filed his petition, under the statute, claiming the attached property as such trustee, and, having given bond as the statute required, the question of the right of property was tried before a jury; and on 25th August, 1885, the jury rendered a verdict against the petitioner, Thompson; and, Thompson having before (namely 20th August, 1885) answered the suggestion against him that he had sufficient funds in his hands of the firm of Wilson & Beardsley to pay the plaintiff's claim, the court entered judgment for the claim, and costs. To this judgment Thompson and Wilson & Beadsley obtained a writ of error.

The deed of trust is not set out in full; only such part as was deemed material to decide the point then before the court; and the court held the deed of trust to be fraudulent on its face, and void *in toto.*

It appears from the facts certified in this case that some time early in the year 1885, certainly before the first of April, 1885, W. T. Thompson, trustee, sold the horses here in controversy, for value, to William Biggs, with the knowledge and consent of A. J. Beardsley, of the firm of Wilson & Beardsley; that Biggs took them into possession, and held them until some time in December, 1885, when,

for value, he sold them to Ward & Henry, who held them until March, 1887, when they sold them for the sum of two hundred and fifty dollars to the plaintiff, T. Q. Thornburg, who held them until the 27th day of August, 1890, when defendants Bowen, Davis & Co. sued out and levied their execution upon them as still the property of their debtors, Wilson & Beardsley, and liable to such levy ; so that, before such levy, plaintiff, Thornburg, and those under whom he claimed and held the horses in controversy, had had actual possession of them, claiming them as their own, for more than five years before the levy of such execution. This is not disputed, but is conceded, on the part of defendants in error.

The action of replevin has been abolished in this State, and the action of detinue is the action for the recovery of the possession of personal property. The statutory bar to this action is five years. See section 12, c. 104, p. 729, Code (Ed. 1891).

That the statute of limitations in this State is not only negative in barring the remedy, but that it creates a positive, prescriptive right to personal property, as well as real estate, is well settled. "It is settled that, when the statutory bar attaches, not only the remedy for the recovery of the property is gone, but that the absolute title thereto is at once transferred to, and thereby vested in, the possessor of the property." *Hall* v. *Webb*, 21 W. Va. 318, 325. "When the period prescribed by statute has once run, so as to cut off the remedy one might have had for the recovery of the property in the possession of another, the title to the property, irrespective of the original right, is regarded in law as vested in the possessor, who is entitled to the same protection in respect to it which the owner is entitled to in other cases. * * * It is vested as completely and perfectly, and is as safe from legislative interference, as it would have been if it had been perfected in the owner by grant or any species of assurance." See Cooley, Const. Lim. 365; Ang. Lim. Act. § 380 ; *Newby* v. *Blakey*, 3 Hen. & M. 57 ; *Elam* v. *Bass*, 4 Munf. 301 ; *Brent* v. *Chapman*, 5 Cranch. 358 ; *Shelby* v. *Guy*, 11 Wheat. 361; *Leffingwell* v. *Warren*, 2 Black. 599. See, also, *Campbell* v. *Holt*, 115 U.

S. 620, 623, 6 Sup. Ct. Rep. 209; *Chapin* v. *Freeland*, 142 Mass. 383 (8 N. E. Rep. 128); Busw. Lim. Act. §§ 1, 4, and cases cited; 13 Amer. & Eng. Enc. Law 688, and cases cited.

It is equally well settled that although such conveyances are fraudulent, and therefore void, they are not absolute nullities, but are only voidable ; that they are good between the parties; and that the grantee, though a participant in the grantor's fraud, can convey a good title to another. See *Fox* v. *Willis*, 1 Mich. 321; *Starke's Ex'r* v. *Littlepage*, 4 Rand. (Va.) 368; *James* v. *Bird's Adm'r*, 8 Leigh. 510; *Terrell* v. *Imboden*, 10 Leigh. 321; *Owen* v. *Sharp*, 12 Leigh. 427.

This results from the language of the statute itself. Section 1, c. 74, Code. See *Freeland* v. *Freeland*, 102 Mass. 475, 477 (1869); *Osborne* v. *Moss*, 7 Johns. 161, and cases cited; *Stewart* v. *Kearney*, 6 Watts, 453 (31 Am. Dec. 482, and notes); *Smith* v. *Grim*, 26 Pa. St. 95 (67 Am. Dec. 400, notes); *Thomas* v. *Soper*, 5 Munf. 28 (8 Am. & Eng. Enc. Law, 771) and cases cited.

The judgment-creditor may treat the attempted fraudulent transfer as a nullity, and proceed at law to sell the property under execution just as if no transfer had been made (*Bank* v. *Risley*, 19 N. Y. 369); or he may resort to a court of equity, and have the conveyance avoided or set aside as fraudulent. That it is good between the parties, and only voidable, and not a mere nullity, see Bump. Fraud. Conv. (3d Ed.) c. 16, p. 443, and cases cited; Waite, Fraud. Conv. §§ 395, 400.

It is not contended that William Biggs was a party to the fraud, or that he was not a purchaser for value and in good faith, so far as he could be such purchaser with a knowledge by recordation of the deed, fraudulent on its face. When he bought the horses in controversy, no attack had been made on the trust-deed, except by D. D. Landeman, and he only attached the real estate. He garnished the trustee, Thompson, as to the proceeds of the sale of the personal property, which included the proceeds of the sale of these horses, and his execution was ultimately satisfied out of such proceeds of sale of the property sold by the trustee.

If we may look to the printed record in the case of *Landeman* v. *Wilson*, then we might say that Bowen, Davis & Co. were some of the creditors secured by the deed of trust to W. T. Thompson. If we are not to look to that, then there is nothing to show that Bowen, Davis & Co. were creditors at all until September, 1890, more than five years after the purchase by William Biggs. The deed of assignment was not a mere nullity, but was only voidable; good between the parties; capable of adoption, express or implied. No attack was ever made by any one, as far as we know, except by Landeman. He did not gainsay or call in question the sales of personal property made by the trustee, but in fact his claim was paid out of the proceeds of such sales. Being good between the parties, it has never been disowned or avoided at the instance of any one having a right to complain. It is capable of present or subsequent ratification, and the trustee or assignee, though, as such, a participant in the fraud of the grantors, can, in the proper mode, in this case, by sale and delivery, transfer the title, which, although it may be voidable if attacked in time, is sufficient foundation for a possession held long enough to ripen into a perfect title, one good against all the world.

And for so much the stronger reason would this be true in favor of a subsequent purchaser for value and of those claiming under him, as against a creditor whose claim did not come into existence until after such purchase, and until after possession had been held thereunder for more than five years; or, in case such purchasers were creditors at the time of the assignment, if they had held such property, claiming it as their own, for more than five years, and had never by any ways or means, direct or indirect, obstructed the prosecution of such creditor's right. See section 18, c. 104, Code. There can be no sound rule of law that would destroy or put in serious jeopardy the title of such a purchaser for value, who has held the same for five years, although he must know that the deed of assignment is fraudulent on its face, and therefore voidable by the creditors, if they see fit to repudiate the assignment, and enforce their rights.

Public policy requires that, as against such purchasers,

the diligence of the creditors in making up their minds as to what they will do should be quickened to the extent of enforcing their remedy within the time prescribed against the recovery of personal property; otherwise, the commerce of the business world would have to wait on them indefinitely. If there is no bar, when and how is such property to become a safe subject of sale and purchase for strangers? The fallacy of such reasoning lies in putting such outside purchasers, with notice of the fraudulent character of the deed of trust, on the same footing with the fraudulent alienee.

We are referred by defendants in error to the case of *Snoddy* v. *Haskins,* 12 Gratt. 363. In that case the property in question was taken and held by Robert W. S. Snoddy, in secret trust for his debtor Tyree, and continued to be so held during his life, and at his death was allotted to his widow, who continued to hold the property impressed with the same trust. It was still Tyree's in fact, and continued to be held in actual fraud of the rights of Tyree's creditors.

Whereas in the case now under consideration the plaintiff, Thornburg, and those under whom he claims, were strangers, in no way parties to the fraud; were purchasers for value, from those who had at least the right to sell a voidable title; and if Bowen, Davis & Co. were then creditors, their remedy at once accrued, and was barred by the lapse of five years. If they did not become creditors until August, 1890, they had no right to call such sale and purchase in question. So far as they are concerned, the sale was made by those who had the title, the possession, and the right to sell. What right had these subsequent creditors to complain of the sale made by the trustee and debtor, Beardsley, to William Biggs?

Section 14, c. 104, Code, reads as follows: "No gift, conveyance, assignment, transfer, or charge which is not on consideration deemed valuable in law shall be avoided, either in whole or in part, for that cause only, unless, within five years after it is made, suit be brought for that purpose, or the subject thereof, or some part of it, be distrained or levied upon by or at the suit of a creditor as to whom such gift, conveyance, assignment, transfer, or charge is

declared to be void by the second section of the seventy fourth chapter."

From this the implication arises that such limitation does not apply to cases of actual fraud (*Snoddy* v. *Haskins* (1855) 12 Gratt. 363, 368) that is, if A. makes a voluntary conveyance or transfer to B.—that is, a transfer for a consideration, not valuable, but which transfer is not actually fraudulent—the remedy against the property is limited to five years; but if it be actually fraudulent, though for a valuable consideration, the limitation of five years does not apply, but their right is left as it was without such enactment. But there is no implication that if, in the latter case, the property be sold by the fraudulent grantee to one not a party to the fraud, though he may know the deed of assignment to be fraudulent on its face, and for that reason voidable—no implication that such purchaser may not protect his possession by the appropriate statute of limitations, provided he has not participated in such fraud, nor by any direct or indirect ways or means obstructed the prosecution of such creditor's right. Being only voidable at the instance of the creditors who have a right to gainsay it, how is such purchaser to know that they do not ratify or abide by it? And, if they permit such purchaser to hold it peaceably for five years, then attack as to him comes too late.

But if these defendants, Bowen, Davis & Co., are subsequent purchasers, what ground have they shown to set it aside at all or at any time? In one respect the purchasers may occupy no higher ground than the fraudulent grantee from whom he buys, but he may, nevertheless, be protected by the ordinary statute of limitations, and his voidable title made good by lapse of time. Nor is there anything in *Snoddy* v. *Haskins, supra*, that militates against this view, or anything to make inoperative or inapplicable the ordinary statute of limitations.

These parties held these horses in actual, visible possession for more than five years, claiming them as their own. They were not parties to the fraudulent deed of trust; had no knowledge of it except what is imputed to them as well as to others by reason of its being a recorded paper; and

that is the only fraud in the case. How could or did they conceal it? Ang. Lim. Act. (6th Ed.) § 183; Wood, Lim. Act. p. 115, § 58 *et seq.*; Busw. Lim. Act. §§ 340, 346, 385, 387, 390, and cases cited; *Callis* v. *Waddy*, 2 Munf. 511; *Rice* v. *White*, 4 Leigh 474; *Bickle* v. *Chrisman*, 76 Va. 673. It is also true that, before the ordinary statute of limitation as a bar to the remedy can come into operation, there must be a party to sue, and a thing to sue about, as well as a party to be sued; but this does not mean that any one can at an indefinite future period make himself a creditor of the fraudulent grantor, and thus destroy the effect of the lapse of time during which such purchaser from the grantee has had possession of the property under his color of title. The statute of limitations, with such possession, perfects the title of the adverse holder, and the right of the new and subsequent creditor must take the purchasers' title as it finds it, and can not shorten the time of his adverse holding to meet the creditor's new-born right to levy or to sue.

I have discussed the case on the theory that Thompson, the trustee, did not and could not pass to the purchaser an unassailable title, although no steps had been taken against the deed of assignment, but that he passed a voidable title —mere color of title; one that might be successfully assailed if there should turn out to be any creditor who should think fit to attack it, but, nevertheless, a title which time and possession would ripen into a perfect one. It is true that Landeman, the only dissatisfied creditor, as far as we know, did, by suit and attachment, attack the deed of assignment, but recognized the sales made by Thompson, trustee, as valid, and attached the proceeds of sale in his hands, which included these horses; and his claim was satisfied out of such proceeds in the trustee's hands.

We think, therefore, that plaintiff's instruction No. 1 propounds the law correctly, and was properly given, and it is based upon a supposed state of facts confessedly proven; and, the jury having found a verdict in violation of such instruction, the court ought, on plaintiff's motion, to have set the same aside.

For the reasons already given, I regard plaintiff's in-

struction No. 3 as correct; that the perfecting of plaintiff's, Thornburg's title, by five years' possession, did not require the acquiescence of Wilson & Beardsley in the sale made by the trustee.

Plaintiff's instruction No. 2 seems to be based upon the theory that the deed in question, being fraudulent on its face, and void *in toto*, is therefore absolutely void—a mere nullity, incapable of adoption or ratification; and, being so regarded, the title to the property remains in the attempted grantees, as though the fraudulent deed had not been executed.  In that view, Biggs, being a *bona fide* purchaser for value from the trustee, with the knowledge and acquiescence of Wilson & Beardsley, would be regarded as purchaser from them, and would take a good title, no other or independent fraud being shown in the case.  But this, as I have already attempted to show, is not correct.  The fraudulent conveyance is good between the parties, and is only voidable ; and if the creditors, or others who have a right to assail it, assent to it, and recognize it as binding, that takes away the taint of fraud.  See discussion of the subject in 2 Bigelow, Frauds, 397–414, and cases cited; Waite, Fraud. Conv. § 408 *et seq.*

That the deed is void *in toto*, and utterly void, in the sense of being incapable of ratification, are two different things, sometimes confounded.  See *Henderson* v. *Hunton*, 26 Gratt. 926.  A deed may be tainted with actual fraud, concurred in by both parties, and yet not need a new deed in order to pass the title, as would be the case if it were a mere nullity. But if the deed was fraudulent on its face, and void *in toto* —a mere nullity, in the sense of being incapable of ratification, and passing no title to the trustee—then plaintiff's instruction No. 2 would be correct, and the sale made by W. T. Thompson to Biggs, with the knowledge and acquiescence of Wilson & Beardsley, would pass the title, for there is nothing to show that Wilson & Beardsley were insolvent (see *Landeman* v. *Wilson*) nor is there anything to indicate fraud of any kind in such sale and delivery of the horses in controversy, the deed of assignment being put aside as a mere nullity, for the property conveyed by that deed in value exceeds the debts by more than twenty one

thousand dollars (see *Landeman* v. *Wilson*, 29 W. Va. 702–729 (2 S. E. Rep. 203).

I see no error in the instructions, defendant's Nos. 1 and 2, as modified and .given by the court. The instructions as asked by defendants in error were based on the theory that such void or voidable title of Biggs, and those claiming under him, could not by five years' possession be ripened into a good title, as against defendant's right to levy on and sell the horses under their execution. We have already shown that such sale and delivery for value constituted a sufficient color of title, and that this may be so although the purchaser took no better title than his fraudulent vendor had.

I have already examined the case of *Snoddy* v. *Haskins*, 12 Gratt. 363, and shown that while it is true that section 14, c. 104, p. 729, Code (Ed. 1891) limiting the period in which suits may be brought to set aside conveyances or transfers of property on considerations not deemed valuable in law, does not apply to cases of actual fraud, but that the plain terms of the section raise the implication that the right is left as it would be without such enactment; yet the ordinary statute of limitation does run in favor of such purchaser who has held the property in actual possession long enough to perfect his title, but not computing as part of such time the period during which such adverse holder has by any ways or. means, direct or indirect, obstructed the prosecution of such right. See section 17, c. 104, Code. The ordinary statute of limitations runs in cases of actual fraud, as well as in other cases, at least from the time of its discovery. See Waite, Fraud. Conv. § 292, and cases cited above.

Plaintiff, Thornburg, in addition to the statute of limitations of five years, also relies upon purchase of the horses as having been made from Ward & Henry, who, it is contended, were purchasers for value, without notice ; that Ward & Henry, being purchasers for value without notice, acquired a valid title to the horses, as against the creditors of Wilson & Beardsley and all others, which title, by their sale to Thornburg, for value, they transferred to and vested in him, notwithstanding Thornburg's knowledge of the

fact that the horses were embraced in the Wilson & Beardsley assignment, which was fraudulent on its face, and void. If the assumption of fact is correct that Ward & Henry are purchasers for value without notice, the law, as plaintiff claims it, is well settled that a purchaser with notice who bought of a purchaser without notice will not be affected by the fraudulent deed. *Lacy* v. *Wilson*, 4 Munf. 313; *Curtis* v. *Lunn*, 6 Munf. 42; *Spengler* v. *Snapp*, 5 Leigh, 478; *Boon* v. *Chiles*, 10 Pet. 177; 1 Story, Eq. Jur. § 409: 2 Pom. Eq. Jur. (2d Ed.) § 754, and cases cited ; Bish. Eq. (4th Ed.) § 265; *Bumpus* v. *Platner*, 1 Johns. Ch'y 213 (Chancellor KENT).

But the presumption is that all these sales and transfers of the possession of the horses in controversy were made in the county of Cabell, where the deed of assignment was recorded. If it were true or could be presumed that the purchase of Ward & Henry was made out of the county of Cabell, then notice could not be imputed to them as a result of recording the deed. See section 6, c. 74, p. 651, Code. It is true the recordation of the assignment is not specifically proven, but, by agreement, we are referred to the reported case of *Landeman* v. *Wilson*, 29 W. Va. 702 (2 S. E. Rep. 203) where the case opens with the statement that the deed in question was recorded on the 10th day of December, 1884. That is notice to Ward & Henry buying in Cabell county.

It is true there was no fraudulent intent on the part of Biggs, the immediate grantor of Ward & Henry ; but Ward & Henry, as well as the plaintiff, Thornburg, had knowledge of the fraud rendering void the title Ward & Henry derived from Biggs, the grantee of the parties to a recorded deed, fraudulent and void on its face. There is no evidence where or how Ward & Henry bought from Biggs, except that it was in December, 1885, for a valuable consideration, with delivery of possession.

The plaintiff, Thornburg, was examined as a witness, and testifies that he had actual knowledge that the horses were originally the property of Wilson & Beardsley, and were included in the fraudulent assignment to Thompson ; but that he bought them in good faith in March, 1887, of

Ward & Henry, paying for them the sum of two hundred and fifty dollars, and that he had no notice of any claim ever having been made to them until 27th August, 1890, when Bowen, Davis & Co. caused their execution to be levied on them.

It may, however, be said with a good deal of plausibility, that, although the title of trustee, Thompson, was void, it does not necessarily follow, under the findings in this case, that the title of Biggs and the title of Ward & Henry were void, or that Thornburg had notice of the fraud rendering void the title of such grantors, although their titles went back to a recorded deed, fraudulent and void. *in toto* on its face.

But the facts on this point are meager, and I do not deem it necessary further to discuss or to decide it. The facts found and certified do show without contradiction that Thornburg, and those under whom he holds, had had actual possession of the two horses in controversy for more than five years before the issuing or levy thereon of the execution of Bowen, Davis & Co., and claiming the same as their own, under purchases for valuable considerations.

Therefore the judgment and verdict complained of must be set aside, and a new trial awarded.

REVERSED. REMANDED.